2026 IL App (1st) 251051-U
No. 1-25-1051
Order filed July 15, 2026

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 CR 11507 |
| | ) | |
| MAURICE BLALOCK, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Martin and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's sentence for aggravated battery of a peace officer where he failed to show that the trial court considered improper factors such that review for plain error or ineffective assistance of counsel would be warranted.

¶ 2    Following a jury trial, defendant Maurice Blalock was convicted of aggravated battery of a peace officer and sentenced to three years in prison. On appeal, defendant challenges his sentence, contending that the trial court improperly considered a factor inherent in the offense and facts not in the record. We affirm.

¶ 3    Following an incident on October 24, 2024, defendant was charged with aggravated battery of a peace officer (720 ILCS 5/12-3.05(d)(4)(i) (West 2024)).

¶ 4    At trial, Brittany Wells testified that she worked as a security guard at Kennedy-King College (Kennedy-King) and was posted at the front entrance of the "V Building" on October 24, 2024. Kennedy-King's policy required students to sign in and show identification upon entry, and multiple signs to this effect were posted in the lobby.

¶ 5    Shortly after 8 a.m., defendant, whom Wells identified in court, entered the V Building and walked by Wells, who requested his student identification. Defendant stated that he was "not showing [her] s***" and ascended the stairs. Wells "cut [defendant] off" on the stairs and informed him that he had to leave for the day. Defendant continued up the stairs and repeated that he would "not show*** her s***." Wells followed defendant and blocked his path.

¶ 6    At that point, adult education manager Dwayne Daniel appeared at the top of the stairs and told defendant, "if she said you have to leave, you have to leave." Defendant swore at Daniel and Wells. Wells "attempted to redirect" defendant by grabbing his jacket sleeves. Defendant "became belligerent" and pulled his arms away, "throwing his arms around" while attempting to go around Wells and Daniel. A security guard arrived and stood behind defendant. Thinking the other security guard "had" defendant, Wells began descending the stairs. Defendant then "struck" the right side of Wells's face with a "closed fist," causing her to feel pain and later bruise. Wells and two other security guards took defendant down to the lobby floor, handcuffed him, and called the police.

¶ 7    Daniel testified that he heard defendant speaking "irate[ly]" to Wells. Daniel approached Wells and defendant on the stairs, and when Wells and Daniel told defendant to leave, defendant continued to use profanity. Wells grabbed defendant's wrist, but defendant continued up the stairs. Defendant then "muff[ed]" Wells's face.

¶ 8      Defendant testified that he was a student at Kennedy-King and arrived early for class on October 24, 2024. He gave Wells his identification card, which she put in her pocket. Defendant ascended the stairs, but Wells "cut [him] off" and asked where he was going. He replied that he was going to get an identification, but she said, "no" and shoved him in the shoulder so that he fell down the stairs, injuring his knees. Defendant denied striking Wells. He admitted that he was on probation that day. (Based on the record on appeal, we believe that defendant referred to probation in a criminal matter.)

¶ 9      On cross-examination, defendant testified that he told a Chicago police officer that Wells had taken his identification card.

¶ 10     In rebuttal, the State introduced evidence of defendant's conviction for aggravated unlawful use of a weapon (AUUW) and called a Chicago police officer, who testified that defendant did not inform her that Wells had taken his identification card.

¶ 11     After closing arguments, the jury found defendant guilty of aggravated battery. Defendant filed a motion and an amended motion for a new trial, which the trial court denied.

¶ 12     Defendant's presentence investigative report (PSI) reflected that he was 43 years old at sentencing. Defendant reported having "the best childhood," and that he had been raised mostly by his mother. He was single and had three children, whom he rarely saw. Defendant attended school until the 11th grade but enrolled at Kennedy-King to earn his GED. His mother had financially supported him his entire life.

¶ 13     At three months old, defendant experienced cardiac arrest due to pneumonia and "was found to be 'cognitively delayed' " with delayed motor skills. Defendant was diagnosed with left hemiparesis, for which he received supplemental security income (SSI). Defendant also reported

being shot in his left eye and that he was awaiting a prosthetic eye replacement. He denied drug or alcohol use.

¶ 14    Defendant previously had been convicted of AUUW, for which he had received probation, driving with an expired license, aggravated assault, criminal trespass, battery, and several drug-related charges. He believed he had "never lost control over events in his life" and was "in control all the time."

¶ 15    At sentencing, JoAnn Blalock-Davis, defendant's mother, read her statement aloud. She explained that defendant suffered from a "learning disability" due to his left hemiparesis, had attended special-need classes since grammar school, and received "monthly income for his condition." Speech and walking were "a little difficult" for him, and he had communication issues. However, defendant was "a very independent individual" with his own apartment, buying his food, and maintaining his personal hygiene. Blalock-Davis detailed that defendant lost his sister to cancer, had been shot twice, and suffered several incidents during incarceration. She added that defendant's family loved him, and he was active in his daughter's life and their church.

¶ 16    Defense counsel proffered a letter from defendant's aunt, Juanita McCary, requesting that defendant receive probation. The trial court confirmed that it had read the letter, which is included in the record on appeal and in which McCary discusses defendant's optimism and hard work.

¶ 17    Arguing in aggravation, the State highlighted purported inconsistencies between the PSI and Blalock-Davis and McCary's statements, defendant's belief that he had never lost control, and his criminal background. The State emphasized that when defendant committed this aggravated battery, he was on probation for AUUW, which the State characterized as a "break." Defendant had been under court supervision through either social services or probation "on no less than *** six prior occasions," but "none of them ha[d] made a difference."

¶ 18    Defense counsel argued that defendant had received probation for AUUW because he had possessed the weapon based on his fear of being shot again. Counsel added that the trial court could see defendant's disabilities during his testimony. Counsel also stressed that defendant was attempting to improve himself by earning his GED, despite his disabilities. Counsel asserted that defendant was not a dangerous person, and his "behavior on that day could be addressed in probation through anger management."

¶ 19    Defendant declined to speak in allocution.

¶ 20    The trial court then sought to "clarify" defendant's disability and whether he had ever been able to work. Blalock-Davis and defense counsel explained that defendant's left-sided hemiparesis impacted his speech and mobility and caused a "delay." The court responded, "Got it."

¶ 21    The trial court stated that it had reviewed defendant's PSI. It found "the nature of the offense *** aggravating in the sense that" Wells had "a job *** to keep the college secure, to not let anybody *** in there," and ensure "the safety of students which is everybody's top priority these days." According to the court, this was "an important responsibility, and she [was] fulfilling that responsibility."

¶ 22    The trial court remarked that defendant's disability did "not excuse" his behavior or indicate that "he doesn't know any better." While defendant could receive anger management education through probation, "the problem [was] his background which [was] another thing [the court] need[ed] to consider." The court "considered the disability," which was "why [it] inquired more about it," and "defendant's background." The court observed that defendant had never worked, and the court "appreciate[d] knowing what the disability [was] because" the court did not "think that disability [was] something [preventing] him from working." The court noted that defendant's mother supporting him and SSI appeared sufficient to meet his needs.

¶ 23    The trial court commented that it understood the mitigation, but "the problem" was the aggravation, namely, "what [defendant] did in this case and then the background," and "[e]specially" the aggravating factor that defendant was on probation when he committed the aggravated battery. The court remarked that it had given defendant "a chance" when it imposed probation for AUUW, this case was "a violation of that probation," and "that [was] why" the court would not impose probation here. The court explained that, although defendant's background was not "really violent or that concerning[,]" he had "been arrested, [he] got probation; arrested, got conditional discharge." Therefore, the court did not "find probation [was] at all adequate." Instead, the court imposed the minimum three-year prison sentence. The court reiterated that it did not find it "appropriate" to "give [defendant] probation again."

¶ 24    The trial court terminated defendant's probation unsatisfactorily.

¶ 25    The trial court denied defendant's oral motion to reconsider his sentence, which did not specify any particular error. The State did not object to the oral motion, and defendant did not file a written motion to reconsider his sentence.

¶ 26    On appeal, defendant argues that the trial court considered improper factors in imposing the minimum three-year prison sentence instead of probation. Defendant contends that the court improperly considered an element inherent in the offense of aggravated battery, namely, Wells's status as a peace officer, and also considered facts not in evidence, specifically, that defendant's disability did not preclude him from employment. Defendant concedes that he did not preserve these issues and requests review for plain error or, alternatively, ineffective assistance of counsel for failing to preserve the error.

¶ 27    Generally, a defendant must preserve an issue for review by objecting contemporaneously and filing a written post-sentencing motion. *People v. Hill*, 2026 IL App (1st) 242184, ¶ 16. We

may review unpreserved issues for plain error where "clear or obvious error" occurred and either (1) "the evidence [was] so closely balanced that the error alone threatened to tip the scales of justice against the defendant," or (2) the "error [was] so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." (Internal quotation marks omitted.) *People v. Chambliss*, 2026 IL 130585, ¶ 61. Defendant requests plain error review under the first prong. He bears the burden of establishing plain error or ineffective assistance of counsel and cannot succeed under either without first demonstrating that clear or obvious error occurred. *People v. Spears*, 2024 IL App (1st) 181491, ¶¶ 211-12.

¶ 28    A trial court possesses great discretion when imposing its sentence, and we will not vacate a sentence absent an abuse of that discretion. *People v. Brown*, 2025 IL App (1st) 230772, ¶ 150. A reviewing court typically accords the trial court's sentence "great deference," because the trial court had "the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). We presume a sentence within the statutory range to be proper. *Brown*, 2025 IL App (1st) 230772, ¶ 150.

¶ 29    In exercising its discretion, the trial court must consider all factors in aggravation and mitigation. *People v. Colone*, 2024 IL App (1st) 230520, ¶ 135. The most important factor is the seriousness of the offense. *People v. Doe*, 2026 IL App (1st) 240300, ¶ 51.

¶ 30    The trial court cannot consider improper factors in aggravation. *People v. Streater*, 2023 IL App (1st) 220640, ¶ 73. An element inherent in an offense constitutes such an improper factor. *People v. Murry*, 2025 IL App (1st) 221202, ¶ 118. This prohibition on "double enhancement" assumes that, in establishing the appropriate sentencing range for a criminal offense, "the legislature necessarily considered the factors inherent in the offense." *People v. Phelps*, 211 Ill. 2d

1, 12 (2004). However, a court may "consider the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant." (Internal quotation marks omitted.) *People v. Hussain*, 2024 IL App (1st) 230471, ¶ 25.

¶ 31 Similarly, a court "must exercise care to [e]nsure the accuracy of information considered and to shield itself from what might be the prejudicial effect of improper materials." (Internal quotation marks omitted.) *People v. Jackson*, 149 Ill. 2d 540, 549 (1992). A court cannot base a sentence on speculation or conjecture. See *People v. Zapata,* 347 Ill. App. 3d 956, 964, 966 (2004) (vacating the defendant's sentence because the trial court's "distaste for gang violence" was an improper sentencing factor where no evidence established that the offense was gang-related).

¶ 32 Where a court relies on an improper factor, remand is not warranted "[w]here it can be determined from the record that the weight placed upon the improperly considered aggravating factor was insignificant and that it did not lead to a greater sentence." *People v. Beals*, 162 Ill. 2d 497, 509-10 (1994). When determining whether the trial court considered an improper factor, we examine "the record as a whole, rather than focusing on a few words or statements by the trial court." (Internal quotation marks omitted.) *People v. Wade*, 2025 IL App (1st) 231683, ¶ 70. A defendant "must show that the court relied on the particular improper fact when imposing the sentence." *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 47. We review *de novo* whether the trial court considered an improper factor. *Streater*, 2023 IL App (1st) 220640, ¶ 73.

¶ 33 Defendant was convicted of aggravated battery of a peace officer, a Class 2 felony with a sentencing range of three to seven years in prison. 720 ILCS 5/12-3.05(h) (West 2024); 730 ILCS 5/5-4.5-35(a) (West 2024). Because defendant's three-year sentence falls within the statutory range, we presume it proper. *Brown*, 2025 IL App (1st) 230772, ¶ 150.

¶ 34 Defendant contends that the trial court improperly considered that Wells was a peace officer, an element inherent in aggravated battery of a peace officer, when it imposed a greater sentence than probation. He highlights the court's remarks that the "nature of the offense" was "aggravating" in that Wells had "a job at a college to keep the college secure," and that she was "fulfilling" that "important responsibility" when attacked. Defendant emphasizes that the court only referenced "what [defendant] did in this case," meaning his attack on a security officer, and "[his] background," as aggravating factors.

¶ 35 Here, the trial court did not consider Wells's status as a peace officer in aggravation. Rather, a review of the record as a whole reveals that the court remarked on the seriousness of the offense in the context of heightened concerns for student safety. As noted, the seriousness of the offense is the most important sentencing factor. *Doe*, 2026 IL App (1st) 240300, ¶ 51. The seriousness of defendant's offense would also be a consideration in the court's decision to forgo probation. See 730 ILCS 5/5-6-1(a)(2) (West 2024) (a court shall impose probation unless it is of the opinion, that, *inter alia*, probation "would deprecate the seriousness of the offender's conduct"). In formulating its sentence, the court emphasized that defendant committed this offense while on probation. Even if we were to find the court's reference to Wells's peace-officer status improper, there is no indication that the court placed significant weight on that consideration given the court's repeated reference to defendant's probation status. See *People v. Bourke*, 96 Ill. 2d 327, 333 (1983) (remand not necessary where the trial court only referenced improper factors in passing and emphasized that the defendant had been on probation).

¶ 36 Defendant also argues that, when imposing his sentence, the trial court relied on a mistaken belief that defendant's disability did not preclude him from employment. He stresses that the court said, "the problem is his background." Thereafter, the court addressed defendant's lack of

employment, stating that it did not "know that the disability prevent[ed] him from working," but it did not "think that disability [was] something [preventing] him from working." Defendant contends the evidence at trial showed that he received SSI, a form of government assistance for those unable to work. Regardless of the disability's impact on defendant's ability to work, he has failed to show that the trial court improperly relied on that when imposing the minimum three years in prison. Rather, the court mentioned defendant's disability within the context of his work history in passing. See *id.* Moreover, as discussed, the court explained it imposed incarceration instead of probation because defendant was on probation when he committed the aggravated battery. Because defendant has failed to show that the trial court imposed a harsher sentence based on consideration of an element inherent in aggravated battery as charged, or based on evidence not in the record, defendant has not demonstrated that clear or obvious error occurred. Therefore, review for plain error or ineffective assistance of counsel is unwarranted. *Spears*, 2024 IL App (1st) 181491, ¶ 212.

¶ 37    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 38    Affirmed.